UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FLOYD P. DONLEY, SR.                    CIVIL ACTION

VERSUS                                  NO. 10-3223

HUDSON'S SALVAGE, LLC ET AL.            MAGISTRATE JUDGE
                                        JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTIONS

This is a civil rights action brought by pro se plaintiff Floyd P. Donley, Sr. against

two discrete sets of defendants:  (1) Hudson's Salvage LLC, "Hudson's Insurance

Carrier," and Hudson's employees Linda Cox, Elaine Hingle, Alan Spallinger, Lois

Peltier, Angie Carter and Jerry Holifield (the "Hudson's Defendants"); and (2) City of

Amite Police Officers Allen Ordeneaux, III, Joey Phillips and Dominic Cuti, Police Chief

Jerry Trabona, Captain Ted Simmons, Sgt. Varnado, Amite City Magistrate Charles

Reid, the Amite City Council and Mayor Reginald Goldsby (the "Amite Defendants").

Donley's claims arise out of an incident that occurred on September 24, 2008, at

the Dirt Cheap Store in Amite, Louisiana, during which he was arrested and charged with

two counts of battery on store employees Hingle and Spallinger.  Plaintiff was convicted

on December 3, 2008 in the Amite City Mayor's Court of one count of battery on Hingle.

He appealed to the 21st Judicial District Court for the Parish of Tangipahoa, which dismissed the criminal charges against him on October 7, 2009.[1]

In his original complaint, Donley brings claims of unlawful detention and malicious prosecution against the Hudson's Defendants pursuant to 42 U.S.C. § 1983 and Louisiana state law. Record Doc. No. 1. In his amended complaint, he asserts numerous additional claims arising under Section 1983 and Louisiana law. Donley claims that Officers Ordeneaux and Phillips illegally searched and used excessive force against him, and that Officer Cuti failed to protect him from the excessive force. Plaintiff claims that these officers unlawfully imprisoned and arrested him without probable cause. He brings claims of conspiracy and malicious prosecution against all defendants. He alleges that Magistrate Reid violated his due process rights during his criminal prosecution by failing to arraign him formally. He claims that Sgt. Varnado, Capt. Simmons and Chief Trabona failed to investigate adequately his complaint to the police department about the events of September 24, 2008. He asserts that Capt. Simmons and Chief Trabona knew that the arresting officers committed perjury during his criminal trial, but did nothing to stop it and failed to suspend the officers. He brings a claim against Capt. Simmons, Chief

---

[1]Some of the parties' submissions state that the charges were dismissed on September 24, 2009. Plaintiff submitted a copy of the judgment, Plaintiff's Exh. I, which states that Donley and an assistant district attorney appeared for a hearing on September 24, but no counsel appeared for the City of Amite. The judgment of dismissal was signed on October 7, 2009.

Trabona, Mayor Goldsby and the City Council for failing to properly hire, train and/or supervise their police officer employees. Finally, he claims that, because Reid was also the City Attorney, Mayor Goldsby and the City Council illegally appointed Reid as a magistrate of the Mayor's Court. Record Doc. No. 5.

This matter was referred to the undersigned magistrate judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties. Record Doc. No. 130.

Each set of defendants filed a motion for summary judgment: (1) The Amite Defendants' Motion for Summary Judgment, Record Doc. No. 62; and (2) The Hudson's Defendants' Motion for Summary Judgment, Record Doc. No. 69. Donley filed his own motion for summary judgment, as well as two other motions that are currently pending before me: (1) Plaintiff's Motion for Summary Judgment, Record Doc. No. 89; (2) Plaintiff's Motion Requesting Court to Grant Plaintiff's Previous Request for Summary Judgment, Record Doc. No. 118; and (3) Plaintiff's Motion to Have Court Appoint a Hearing Impaired Interpreter, Record Doc. No. 93 (which is unopposed).

The Amite Defendants filed timely memoranda in opposition to plaintiff's motions for summary judgment, Record Doc. Nos. 105, 121, and a supplemental memorandum in support of their own summary judgment motion. Record Doc. No. 134. The Amite Defendants argue that plaintiff's claims against them are barred by res judicata (claim

preclusion), collateral estoppel (issue preclusion), qualified immunity under state and federal law, the lack of any evidence of any unconstitutional municipal policy by the defendant Amite City Council, and judicial immunity for defendant Reid.  The Amite Defendants support their arguments with sworn affidavits from defendants Ordeneaux, Phillips and Simmons; certified copies of the Amite City Police Department arrest and booking documents from the September 24, 2008 incident; plaintiff's prior complaint in this court against defendants Ordeneaux, Phillips, Cuti, Trabona, Simmons and Jason Schwebel[2] in Donley v. Ordeneaux et al., Civil Action No. 09-6422-J; this court's order and reasons granting the police officers' summary judgment motion and the judgment dismissing with prejudice plaintiff's complaint in that action, Donley v. Ordeneaux, No. 09-6422, 2010 WL 2836115 (E.D. La. Jul 16, 2010) (Barbier, J.), aff'd, 419 F. App'x 519 (5th Cir.), cert. denied, 2011 WL 3420716 (2011); the decision of the United States Court of Appeals for the Fifth Circuit affirming this court's dismissal of all claims in Civil Action No. 09-6422-J, Donley v. Ordeneaux, 419 F. App'x at 519; plaintiff's prior complaint against defendant Reid in Civil Action No. 2009-0004169 in the 21st Judicial District Court and that court's judgment in favor of Reid; the decision of the Court of Appeal for the First Circuit of the State of Louisiana, affirming the 21st Judicial District

---

[2]Schwebel was a paramedic who responded to the call for an ambulance for Donley. Schwebel was dismissed early in the 2009 civil action.  He is not a defendant in the instant case.

Court's dismissal of Civil Action No. 2009-0004169, <u>Donley v. Reid</u>, No. 2010 CA 1217, 2010 WL 5487149 (La. App. 1st Cir. Dec. 22, 2010), <u>writ denied</u>, 61 So. 3d 669 (La. 2011), <u>cert. denied</u>, 79 U.S.L.W. 3712 (2011); the Louisiana Supreme Court's denial of Donley's application for writs in that case, <u>Donley v. Reid</u>, 61 So. 3d at 669; the opinion of the First Circuit Court of Appeal in No. 2010 CA 1315, <u>Donley v. Hudson's Salvage LLC</u>, 57 So. 3d 605, 2010 WL 5480438 (La. App. 1st Cir. 2010), affirming in part and reversing in part the judgment of the 21st Judicial District Court in Civil Action No. 2009-0004174, in which the trial court had dismissed all of plaintiff's claims in that suit against Hudson's Salvage LLC, Cox, Hingle, Spallinger, Peltier and Holifield; and a letter dated October 11, 2011 from the Clerk of the United States Supreme Court to defendants' attorney, advising that the Court had denied Donley's writ of certiorari from the Fifth Circuit's decision in <u>Donley v. Ordeneaux</u>, 419 F. App'x 519.

The Hudson's Defendants argue in their summary judgment motion that all of plaintiff's claims against them, except his malicious prosecution claim, are prescribed. As to the malicious prosecution claim, these defendants contend that Donley can produce no evidence to establish the absence of probable cause to arrest him, which is an essential element of a malicious prosecution claim under Louisiana law. The Hudson's Defendants also argue that Donley cannot bring any Section 1983 claims against them because they are private actors who did not act under color of state law. They support

their motion for summary judgment with the same First Circuit opinion described above in No. 2010 CA 1315, <u>Donley v. Hudson's Salvage LLC</u>, 2010 WL 5480438. Finally, the Hudson's Defendants adopt all of the arguments raised and exhibits filed by the Amite Defendants in their summary judgment motion.

Donley filed timely memoranda in opposition to defendants' summary judgment motions. Record Doc. Nos. 77, 78. He filed supplemental memoranda in support of his own summary judgment motion. Record Doc. Nos. 106, 133. He filed several motions for leave to file additional memoranda and evidence, Record Doc. Nos. 119, 123, 124, 125, 126, in many of which he reiterated his arguments in support of his motion for summary judgment and in opposition to defendants' motions. Plaintiff's motions for leave were granted to the extent he sought to file the additional materials. Record Doc. No. 132. Thus, Donley has filed voluminous, repetitive and often inadmissible materials in support of his arguments. However, no defendant objected to the admissibility of the submitted materials.[3] Therefore, in deciding the pending summary judgment motions,

---

[3]"A party <u>may</u> object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). The Amite Defendants object only that Donley fails in his memoranda to provide specific citations to evidence, in violation of Fed. R. Civ. P. 56(c)(1)(A). The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.,</u> No. 11-50474, 2011 WL 5042216, at *1 (5th Cir. Oct. 25, 2011) (quotation omitted), and I have done so. I do <u>not</u> find Donley's submissions unacceptable for the reason cited by the Amite Defendants.

I have considered all of the materials submitted by the pro se plaintiff and all of his arguments raised in all of his written submissions.

Having considered the complaint, as amended; the record; the submissions of the parties; and the applicable law, IT IS ORDERED that defendants' motions for summary judgment are GRANTED and that plaintiff's motions for summary judgment are DENIED, for the following reasons.   IT IS FURTHER ORDERED that Plaintiff's Motion to Have Court Appoint a Hearing Impaired Interpreter, Record Doc. No. 93, is DISMISSED AS MOOT.

I.   <u>STANDARD OF REVIEW</u>

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 was revised to "take effect on December 1, 2010, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending."   Order of the Supreme Court of the United States (Apr. 28, 2010), www.supremecourt.gov/orders/courtorders/frcv10.pdf.   Because "the standard for granting summary judgment remains unchanged" by the revision, <u>Federal Civil Judicial Procedure and Rules</u>, 2010 Amendments Advisory Committee Notes, at 260 (West 2011

rev. ed. pamph.) (hereafter "Advisory Committee Notes"), I find it just and practicable

to apply the revised Rule 56 in this proceeding.

Revised Rule 56 establishes new procedures for supporting factual positions:

(1)  A party asserting that a fact cannot be or is genuinely disputed must
support the assertion by:
>  (A) citing to particular parts of materials in the record,
>  including depositions, documents, electronically stored
>  information, affidavits or declarations, stipulations (including
>  those made for purposes of the motion only), admissions,
>  interrogatory answers, or other materials; or
>  (B) showing that the materials cited do not establish the
>  absence or presence of a genuine dispute, or that an adverse
>  party cannot produce admissible evidence to support the fact.

(2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A
party may object that the material cited to support or dispute a fact cannot
be presented in a form that would be admissible in evidence.

(3)  Materials Not Cited.  The court need consider only the cited materials,
but it may consider other materials in the record.

(4)  Affidavits or Declarations.  An affidavit or declaration used to support
or oppose a motion must be made on personal knowledge, set out facts that
would be admissible in evidence, and show that the affiant or declarant is
competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in

the record that it believes demonstrate the absence of a genuinely disputed material fact,

but it is not required to negate elements of the nonmoving party's case.  Capitol Indem.

Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production

may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact." Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any

proof, assume that the nonmoving party could or would prove the necessary facts."
Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted)
(emphasis in original).  "Conclusory allegations unsupported by specific facts . . . will
not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations
. . . to get to a jury without any "significant probative evidence tending to support the
complaint."'"  Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477
U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case;
summary judgment is appropriate in any case where critical evidence is so weak or
tenuous on an essential fact that it could not support a judgment in favor of the
nonmovant."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation
omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291
(5th Cir. 2009).

II.     FACTUAL BACKGROUND

Solely for purposes of the pending motions for summary judgment, the competent
summary judgment evidence establishes the following undisputed material facts.  At all
relevant times, the Amite Defendants were acting in their official capacity as employees
of the City of Amite.

On September 24, 2008, Donley was in the Dirt Cheap Store (which is owned by defendant Hudson's Salvage, LLC) photographing what he perceived to be safety violations, about which he had previously complained to store employees.  Officer Ordeneaux was dispatched to the store to investigate a complaint that Donley was refusing to leave the store.

When Officer Ordeneaux arrived, defendant Cox, a store manager, told him that she had seen Donley photographing the interior of the store.  She had asked Donley to stop the photography because it was against company policy.  She told Officer Ordeneaux that Donley had become verbally combative toward her and that she had asked him to leave the store, but he had refused.

Cox also told Officer Ordeneaux that Donley had punched defendant Hingle, a store employee, in the sternum.  Hingle, whom Officer Ordeneaux states was visibly upset, confirmed to Ordeneaux that Donley had struck her and told him that she was experiencing chest pains as a result.  Officer Ordeneaux was further told that defendant Spallinger, the private security officer on duty at the store, had attempted to control Donley and that Donley had also struck Spallinger.  Hingle and Spallinger both asked Officer Ordeneaux to press charges against Donley for striking them.

Donley, who was 79 years old at the time, had complained to store employees before Officer Ordeneaux arrived and to Officer Ordeneaux himself that he was dizzy,

felt weak and had chest pains after having slipped and fallen on an oil stain inside the store. Cox had already called for ambulances for both plaintiff and Hingle before Officer Ordeneaux came to the store.

Officer Ordeneaux approached Donley inside the store, spoke to him and asked for his driver's license, which Donley refused to produce, despite admitting that he had driven to the store. While Officer Ordeneaux was speaking to Donley, Officer Phillips arrived in response to the same dispatch call. Officers Ordeneaux and Phillips attest in their affidavits that Donley was hostile, loud, abusive and verbally combative toward them during the entire incident. Officer Ordeneaux states that Donley "lunged at me with a closed fist as if to strike me," while Officer Phillips states that Donley "raised his arms above his head and walked towards Officer Ordeneaux in a threatening manner." At this point, Officer Ordeneaux arrested plaintiff. Donley denies that he was verbally or physically abusive to anyone or that he threatened or lunged at Officer Ordeneaux.

The videotaped surveillance footage submitted by plaintiff, which he received on a compact disc from the Hudson's Defendants through discovery in this matter, Record Doc. No. 119-2, is soundless. In the first portion of the video footage, which is labeled "Camera 3: Confrontation at Register 3.mpg," plaintiff was standing and walking in front of two women, presumably Cox, who had a cell phone in her hand, and presumably Hingle, wearing a red vest. Because of the camera angle, the footage shows plaintiff's

body from the shoulder down at times, but it primarily shows only his legs and hands. The body of the woman in the red vest largely blocks the view of plaintiff's body.  It is possible, but not clearly visible, that Donley struck the woman in the red vest in the chest with his right arm or shoulder as he walked past her.

The second portion of the videotape consists of six segments labeled "Camera 8: corner of store being handcuffed (1).mpg" through "(6).mpg."[4]  This footage shows plaintiff standing near a merchandise table at the back of the store with Spallinger and Cox standing nearby, but not close enough to touch plaintiff.  Cox walked away and Donley sat down with his left buttock and upper leg on the table.  He talked and gestured at Spallinger, who stands in the same spot with his hands clasped in front of him.  A police officer, presumably Ordeneaux, arrived and talked with plaintiff, who remained seated.  The view of Officer Ordeneaux's body is sometimes partially blocked by a post, but it is clear that Officer Ordeneaux never touched plaintiff until he handcuffed him. Donley continued to talk and gesture at Officer Ordeneaux.

Two other officers, presumably Phillips and Cuti arrived, and stood talking with plaintiff and Ordeneaux.  These officers also do not touch Donley.  The view of Donley's hands is blocked by one of the officers during this time.  Officers Phillips and Cuti then

---

[4]Most of the relevant action is in segment (2).

walked away.  Donley continued to talk and gesture with his arms and hands, both towards and away from Officer Ordeneaux.

Plaintiff abruptly gestured at Officer Ordeneaux with his right arm.  However, his right hand is not visible in the video.  Donley then made a quick motion with both hands crossing in front of him and out again, like a baseball umpire signaling "safe."  Although it is possible that plaintiff gestured at Officer Ordeneaux with a closed right fist at some point when his hands were not visible to the camera, the footage does not show plaintiff lunging at Officer Ordeneaux or raising his arms above his head and walking towards Officer Ordeneaux in a threatening manner.

After plaintiff's crossing hands gesture, Officer Ordeneaux stepped back and said something to him.  Donley stood up without being touched and turned his back towards Officer Ordeneaux.  Officer Ordeneaux stepped forward and twisted Donley's right arm behind his back, while bending plaintiff's body forward at the waist.  Donley's left hand was braced on the table.  Officer Ordeneaux held plaintiff in that position for a few seconds while Officer Phillips returned to assist Officer Ordeneaux with handcuffing plaintiff.  Plaintiff was bent over with the upper half of his body resting on the table while the two officers secured the handcuffs.

The officers raised plaintiff by his upper arms and lowered him to the floor behind the merchandise racks, where he was no longer visible to the camera.  All three officers

knelt down by Donley. Two of the officers then stood up, one carrying a set of handcuffs. The officers remained near Donley until paramedics arrived. The paramedics put Donley on a stretcher and loaded him into the ambulance. That is the end of the video.

The paramedics transported plaintiff to the hospital, where he was examined and released. The police allowed him to leave the hospital to visit his personal physician for a second opinion. He was instructed to surrender to the Amite City Police Department the next day.

Donley surrendered to the Amite police on September 25, 2008. He was booked with two counts of simple battery, based upon the complaints of Hingle and Spallinger.

Hingle, Spallinger, Ordeneaux and Phillips testified at Donley's criminal trial in the Amite City Mayor's Court before Magistrate Reid. Donley was convicted of one count of simple battery on Hingle on December 3, 2008. He appealed to the 21st Judicial District Court, which dismissed the charges against him on October 7, 2009, apparently because the City Attorney had not appeared for the hearing on September 24, 2009.

III.    ANALYSIS

A.    Plaintiff's Claims Are Barred by the Judgments in his Prior Lawsuits

Donley filed three prior civil actions[5] based on his September 24, 2008 arrest at

the Dirt Cheap Store and his subsequent conviction for one count of battery.   All

defendants argue that Donley's claims in the instant lawsuit are barred by the judgments

against him in his three previous lawsuits.  I find that there is no genuine dispute as to

any material fact and that all defendants are entitled to summary judgment on all of

plaintiff's claims on the basis of res judicata.

1.    Donley v. Ordeneaux et al., Civil Action No. 09-6422-J, U.S.
District Court, E.D. La.

On September 21, 2009, Donley filed a Section 1983 complaint in this court

against paramedic Schwebel and police officers Ordeneaux, Phillips, Cuti, Trabona and

Simmons in their capacities as employees of Amite City.[6]  As to the police officer

defendants, plaintiff brought claims of

---

[5]The Amite Defendants assert in their memorandum that Donley also filed a fourth action in the
21st Judicial District Court arising out of the same events against "Acadian Ambulance et al., Case No.
09-41."  Record Doc. No. 62-1 at p. 6.  Because defendants have provided no <u>evidence</u> regarding the
allegations of that petition, the parties or the disposition of the case, I have not considered that lawsuit
in reaching my decision.

[6]The Amite Defendants in the instant case assert that Amite City was a named defendant in
plaintiff's prior case.  However, according to the record, the City was not named as a defendant and did
not file an answer in that action.

> false arrest and the use of excessive force by [Ordeneaux, Phillips and Cuti]. His complaint also named Chief Trabona for negligent hiring, negligent training, and refusal to provide a copy of the internal investigative report. Finally, the complaint named Captain Ted Simmons for refusing to provide the internal report, for failing to fire Sgt. Cuti, and for allegedly threatening to sue and arrest Donley.

Donley v. Ordeneaux, 419 F. App'x 519, 519-20 (5th Cir.), cert. denied, 2011 WL 3420716 (2011).

In affirming Judge Barbier's grant of summary judgment and dismissal of plaintiff's claims on the basis of qualified immunity, the Fifth Circuit held that

> Donley cannot show that his constitutional rights were violated because the arresting officers had probable cause to arrest Donley at the Dirt Cheap Store.
>
> The record indicates that the officers responded to a call from the store complaining about Donley. They interviewed witnesses on site who attested to Donley's allegedly [sic] battery. This gave the officers knowledge sufficient to warrant a prudent man in believing that the person arrested had committed . . . an offense. In addition, we agree with the district court's determination that there is no evidence in the record to support Donley's claims that the officers used excessive force. Since Donley has not established that his constitutional rights were violated, the three arresting officers are entitled to qualified immunity.
>
> Police Chief Trabona and Captain Simmons also assert that they enjoy qualified immunity against plaintiff's claims. We agree. As the district court noted, Donley has no constitutional right to receive copies of an internal investigative report. And there is no evidence in the record that Chef [sic] Trabona or Captain Simmons were negligent in hiring or retaining the three arresting officers.

Id. at 520 (quotation and citations omitted).

17

2.      Donley v. Charles Reid, No. 09-4169, 21st Judicial District Court,
        Parish of Tangipahoa, State of Louisiana

In this lawsuit, filed on December 1, 2009, plaintiff sued Reid in his capacity as

the City Attorney and Magistrate of Amite City.

> Donley alleged that his due process rights were violated because Reid
> failed to:  (1) inform him of the exact nature of the charges brought against
> him; (2) arraign him before trial; (3) terminate the trial when it became
> clear that the charges were not based on a valid city ordinance; and (4) halt
> the trial when it became clear that [Donley] was hearing impaired and
> unable to properly handle his own defense.  The petition further alleged
> that the magistrate was biased because he considered perjured testimony.
> Donley also claimed that Reid had no legal authority to act as magistrate
> or city attorney because the clerk of court "could not produce recent
> documents to support [Reid's] authority."

Donley v. Reid, No. 2010 CA 1217, 2010 WL 5487149, at *1 (La. App. 1st Cir. Dec. 22,

2010), writ denied, 61 So. 3d 669 (La. 2011), cert. denied, 79 U.S.L.W. 3712 (2011).

The trial court granted Reid's peremptory exception of no cause or right of action

and dismissed plaintiff's case on the ground that Reid enjoyed judicial immunity for all

of his official acts as a presiding officer of a mayor's court.  Id.  The First Circuit Court

of Appeal affirmed on the same basis.  Id. at *2.

3.      Donley v. Hudson's Salvage et al., No. 09-4174, 21st Judicial
        District Court, Parish of Tangipahoa, State of Louisiana

Donley sued Hudson's Salvage, Cox, Hingle, Spallinger, Peltier and Holifield on

December 1, 2009 in this action "for personal injury, false arrest and imprisonment,

defamation, malicious prosecution, and violation of his civil rights," arising out of his September 24, 2008 arrest and December 3, 2008 trial.  Donley v. Hudson's Salvage LLC, 57 So. 3d 605, 2010 WL 5480438, at *1 (La. App. 1st Cir. 2010).  Plaintiff's defamation claim was based on his allegations that Cox, Hingle and Spallinger testified falsely at his criminal trial and "'wrote false narrative reports' on December 8, 2008, five days after the trial, 'with the intent to defame [p]laintiff.'"  Id. at *2.  The trial court sustained defendants' peremptory exceptions of prescription.  The court held that Louisiana's one-year prescriptive period for delictual actions barred all of plaintiff's claims, and dismissed his action with prejudice.  Id.

The First Circuit reversed in part, finding that Donley's defamation claims had accrued on December 3 and/or December 8, 2008 (the dates when Cox, Hingle and Spallinger allegedly testified falsely at his criminal trial and wrote false narrative reports after the trial), and that his malicious prosecution claims had accrued on September 24, 2009, when the criminal charges against him were dismissed.  Because both accrual dates were less than one year before Donley filed the civil lawsuit on December 1, 2009, the appellate court reversed the dismissal of his defamation and malicious prosecution claims, and remanded them to the trial court for further proceedings.  Id. at *3.

However, the First Circuit affirmed the trial court's holding that plaintiff's "causes of action for false arrest and imprisonment, physical and mental injury, and violation of

19

his civil rights arising from the incident of September 24, 2008 are prescribed." Id. The First Circuit also held that Donley had failed to show that prescription had been suspended by the Louisiana tolling doctrine of contra non valentem. Id. at *4.

### 4. Federal and state laws of res judicata

Based on the final judgments against Donley in his prior lawsuits, all defendants argue that plaintiff's claims against them in the instant case are barred by the doctrines of claim preclusion and/or issue preclusion. "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" Taylor v. Sturgell, 553 U.S. 880, 892 (2008); accord Myers v. Nat'l Union Fire Ins. Co., 43 So. 3d 207, 213 (La. App. 4th Cir.), writ denied, 49 So. 3d 892 (La. 2010) (same under Louisiana law).

Res judicata is an affirmative defense, as to which defendants bear the burden of proof. Taylor, 553 U.S. at 907; Myers, 43 So. 3d at 211. The res judicata effect of a prior judgment is a question of law. Pot Of Gold, Inc. v. Sampak, L.L.C., No. 10-30725, 2011 WL 4348368, at *2 (5th Cir. Sept. 19, 2011) (citing Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 571 (5th Cir. 2005)); Myers, 43 So. 2d at 210.

As their names indicate, "claim preclusion" and "issue preclusion" apply to different aspects of a prior judgment. Both doctrines share a common goal, as explained by the United States Supreme Court:

> Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.  Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.   By preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.

Taylor, 553 U.S. at 892 (quotations, citations and footnote omitted).  Because I find that Donley's claims are barred by claim preclusion, as explained below, I do not address issue preclusion in the remainder of this decision (although issue preclusion clearly would also apply to numerous issues of fact and law raised by plaintiff's instant suit).

One prior judgment against Donley was rendered by this federal court, while the other two were rendered by Louisiana state courts.  "The preclusive effect of a federal-court judgment is determined by federal common law."  Id. at 891 (citation omitted).

As to state court judgments, the Full Faith and Credit Statute, 28 U.S.C. § 1738, "'requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'"  Sevin v. Parish of Jefferson, 632 F. Supp. 2d 586, 594 (E.D. La. 2008) (Vance, J.) (quoting Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982)) (citing St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425 (5th Cir. 2000)).  "In determining

21

the preclusive effect of an earlier state court judgment, federal courts apply the preclusion

law of the state that rendered the judgment." Weaver v. Tex. Capital Bank N.A., No. 10-

10835, 2011 WL 4910018, at *4 (5th Cir. Oct. 17, 2011) (citing 28 U.S.C. § 1738;

Marrese v. Am. Academy of Orthopaedic Surgeons, 470 U.S. 373, 381 (1985); Conn.

Bank of Comm. v. Congo, 309 F.3d 240, 248 (5th Cir. 2002)).

However, the Louisiana res judicata statute "is modeled on federal preclusion

doctrine and the Restatement of Judgments, [so that] federal jurisprudence may be

consulted when the relevant Louisiana cases leave doubt as to the meaning of the

statute." Sevin v. Parish of Jefferson, 632 F. Supp. 2d 586, 594 (E.D. La. 2008) (Vance,

J.) (citing In re Keaty, 397 F.3d 264, 271 (5th Cir. 2005)).

> The federal common law of claim preclusion
>
> bars the litigation of claims that either have been litigated or should have been raised in an earlier suit.  The test for claim preclusion has four elements:  (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. . . .  When all four elements are present, claim preclusion prohibits a litigant from asserting any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action.

Duffie v. United States, 600 F.3d 362, 372 (5th Cir.), cert. denied, 131 S. Ct. 355 (2010)

(quotation and citations omitted) (emphasis added).

As to the fourth element of federal claim preclusion, the court applies

> the transactional test to determine if two suits involve the same cause of
> action.  "Under the transactional test, a prior judgment's preclusive effect
> extends to all rights of the plaintiff with respect to all or any part of the
> transaction, or series of connected transactions, out of which the original
> action arose." . . . . [I]t is immaterial that some of the legal theories [the
> plaintiff] relies on differ from those in [the prior] complaint.  <u>The critical
> issue is whether the two actions are based on the same 'nucleus of operative
> facts</u>.'"

<u>Cuauhtli v. Chase Home Fin. LLC</u>, 308 F. App'x 772, 774 (5th Cir. 2009) (quoting <u>Test

Masters</u>, 428 F.3d at 571) (emphasis added).

In Louisiana, the doctrine of res judicata is established by statute, which provides

that "a valid and final judgment is conclusive between the same parties" in the following

circumstances:  "If the judgment is in favor of the defendant, <u>all causes of action existing

at the time of final judgment arising out of the transaction or occurrence that is the

subject matter of the litigation are extinguished and the judgment bars a subsequent

action on those causes of action</u>."  La. Rev. Stat. § 13:4231(2) (emphasis added).  Thus,

the statute "precludes re-litigation of claims and issues arising out of the same factual

circumstances when there is a valid final judgment."  <u>Myers</u>, 43 So. 3d at 210 (citing

<u>Ave. Plaza, L.L.C. v. Falgoust</u>, 676 So. 2d 1077, 1079 (La. 1996)).

Therefore, under Louisiana law, defendants in the instant case must establish that

> (1) the [prior state court] judgment is valid; (2) the judgment
> is final; (3) the parties are the same; (4) the cause or causes of

23

> action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

Myers, 43 So. 3d at 211 (quoting Burguieres v. Pollingue, 843 So. 2d 1049, 1053 (La. 2003)).  "[T]he chief inquiry is whether the second action asserts a cause of action which arises out of the same transaction or occurrence that was the subject matter of the first action.'"  Burguieres, 843 So. 2d at 1053.

"The doctrine of res judicata is <u>not</u> discretionary and mandates the effect to be given final judgments."  Batson v. S. La. Med. Ctr., 965 So. 2d 890, 895 (La. App. 1st Cir. 2007) (citation omitted) (emphasis added).  "Once a final judgment becomes final and definitive and acquires the authority of the thing adjudged, no court has jurisdiction, in the sense of power and authority, to modify, revise or reverse the judgment, regardless of the magnitude of the error in the final judgment."  Id. at 896 (citing Ave. Plaza, 676 So. 2d at 1079; Tolis v. Bd. of Supervisors, 660 So. 2d 1206, 1206 (La. 1995)).  On the other hand, "[t]he doctrine of res judicata is stricti juris; any doubt concerning application of the principle of res judicata must be resolved against its application."  Kelty v. Brumfield, 633 So. 2d 1210, 1215 (La. 1994); accord R-Plex Enters., LLC v. Desvignes, 61 So. 3d 37, 39 (La. App. 4th Cir. 2011); Myers, 43 So. 3d at 210.

5.   Claim preclusion bars plaintiff's claims against all defendants **who were named** as defendants in his prior lawsuits

To obtain summary judgment on plaintiff's claims based on claim preclusion, each defendant must satisfy all the elements of claim preclusion under federal or Louisiana law as to the prior judgments.  If any factor is not established as to a particular claim of plaintiff's against a particular defendant, that defendant's motion for summary judgment must be denied as to that claim.

I find, as a matter of law, that the three prior judgments against Donley preclude all of his federal and state law claims in the instant lawsuit against the Amite Defendants who were previously sued, namely Ordeneaux, Phillips, Cuti, Trabona, Simmons and Reid, and against the Hudson's Defendants who were previously sued, namely, Hudson's Salvage, Cox, Hingle, Spallinger, Peltier and Holifield. As to these defendants, the parties in the prior and the instant actions are identical; a court of competent jurisdiction rendered a valid final judgment on the merits in the prior cases; the same claims and causes of action are involved in the previous and the instant lawsuits; and Donley's current complaint asserts causes of action that arise out of the same transactions and occurrences that were the subject matter of the prior actions.  Thus, all of the elements of claim preclusion under federal and Louisiana law are met as to Donley's claims that mirror the claims in his prior lawsuits against these same defendants.

Furthermore, all of Donley's claims against these defendants that he <u>could have raised</u> in his prior lawsuits, but did not, are barred by claim preclusion.  Under both federal and Louisiana law, all of plaintiff's causes of action that existed at the time of the prior judgments and that arose out of the same transactions or occurrences are extinguished and barred from relitigation.  <u>See</u> <u>Duffie</u>, 600 F.3d at 372 (under federal law, "claim preclusion prohibits a litigant from asserting <u>any claim</u> or defense in the later action <u>that was or could have been raised</u> in support of . . . the cause of action asserted in the prior action.") (emphasis added); La. Rev. Stat. § 13:4231(2) ("<u>all causes of action existing at the time of final judgment</u> arising out of the transaction or occurrence that is the subject matter of the litigation <u>are extinguished and the judgment bars a subsequent action</u> on those causes of action.") (emphasis added).

Plaintiff contends that his claims of malicious prosecution are not precluded in the instant suit because they did not accrue until the battery charges against him were dismissed by the 21st Judicial District Court on October 7, 2009.  However, these claims are barred because they accrued <u>before</u> the final judgments were rendered against him on July 16, 2010 in Civil Action No. 09-6422 this court, <u>Donley v. Ordeneaux</u>, No. 09-6422, 2010 WL 2836115 (E.D. La. Jul 16, 2010) (Barbier, J.), <u>aff'd</u>, 419 F. App'x 519 (5th Cir.), <u>cert. denied</u>, 2011 WL 3420716 (2011); on February 23, 2010 in Civil Action No. 2009-0004169 in the 21st Judicial District Court, <u>Donley v. Reid</u>, No. 2010 CA

26

1217, 2010 WL 5487149 (La. App. 1st Cir. Dec. 22, 2010), writ denied, 61 So. 3d 669

(La. 2011), cert. denied, 79 U.S.L.W. 3712 (2011); and on February 19, 2010 in Civil

Action No. 2009-0004174 in the 21st Judicial District Court, Donley v. Hudson's

Salvage LLC, 57 So. 3d 605, 2010 WL 5480438 (La. App. 1st Cir. 2010).  Donley could

have moved at any time after October 7, 2009 and before judgment was rendered to

amend his complaint in each of those actions to include his malicious prosecution claims,

which clearly arose out of the same nucleus of operative facts as his causes of action in

those prior lawsuits.

> 6. Claim preclusion bars plaintiff's claims in the instant lawsuit against all defendants **who were not named** in his prior lawsuits

The next question is whether the prior judgments preclude Donley's claims in this

case against three of the Amite Defendants, Sgt. Varnado, Mayor Goldsby and the Amite

City Council, and one of the Hudson's Defendants, Angie Carter, who were not named

as defendants in Donley's previous lawsuits.  The answer depends on whether, under

federal law, Sgt. Varnado, Mayor Goldsby and the Amite City Council were "in privity"

with the other Amite Defendants in the previous federal action.  It also depends on

whether, under Louisiana law, Carter is considered one of "the same parties" as the other

Hudson's Defendants in Donley's prior state court action against the other Hudson's

Defendants and whether Mayor Goldsby and the Amite City Council are considered "the same parties" as Reid in Donley's prior state court action against Reid.

> a.  Under federal law, Sgt. Varnado, Mayor Goldsby and the Amite City Council are in privity with the other Amite Defendants who were previously sued

Privity is defined generally as "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property); mutuality of interest[, e.g.,] 'privity of contract.'" Black's Law Dictionary (9th ed. 2009) (available without pagination on Westlaw). "A defendant who was not a party to the earlier action can assert res judicata so long as he is in 'privity' with the named defendant. The question of whether privity exists is a factual inquiry . . . ." Dilworth v. Vance, 95 F.3d 50, 1996 WL 457425, at *1 (5th Cir. 1996); accord Royal Ins. Co. v. Quinn-L Capital Corp., 960 F.2d 1286, 1297 (5th Cir. 1992).

> Although whether privity exists is a factual inquiry, a finding of privity
>
> is "a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." In other words, privity is "merely another way of saying that there is sufficient identity between parties" for res judicata to apply. It is a label that expresses the determination that preclusion is justified. "Privity is not a requirement [the court] can satisfy through inquiry; rather the existence of 'privity' is the inquiry satisfied." Given these circular pronouncements, it is understandable that privity has been called an "elusive and manipulable concept." The United States

Supreme Court has even described it as being "conclusory and analytically unsound."

U.S. ex rel. Kennard v. Comstock Res., Inc., No. 9:98-CV-266-TH, 2009 WL 765002, at *6 (E.D. Tex. Mar. 23, 2009) (Heartfield, J.) (quoting Montana v. United States, 440 U.S. 147, 154 n.5 (1979); Russell v. SunAm. Sec. Inc., 962 F.2d 1169, 1174 (5th Cir. 1992); Meza v. Gen. Battery Corp., 908 F.2d 1262, 1266 (5th Cir. 1990); Sw. Airlines Co. v. Tex. Int'l Airlines, Inc., 546 F.2d 84, 95 (5th Cir. 1977)) (citing 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4449, 351 n .33 (2d ed. 2002)).

The Supreme Court in Taylor recently examined the reach of federal non-party preclusion and observed that the term "privity" has acquired multiple meanings. Thus, "to ward off confusion," the Court avoided using the term. Taylor, 553 U.S. at 894 n.8.

Instead, the Supreme Court recognized six categories of non-party relationships that justify preclusion. Id. at 894-95. Three of those categories mirror the three limited categories that the Fifth Circuit has consistently recognized, as follows:

> For res judicata purposes, this court has held that privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in the property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit.

Dilworth, 1996 WL 457425, at *1 (quoting Meza, 908 F.2d at 1266) (citing Fuji Photo

Film Co. v. Shinohara Shoji Kabushiki Kaisha, 754 F.2d 591, 599 (5th Cir. 1985)); cf.

Taylor, 553 U.S. at 894-95 ("Second, nonparty preclusion may be justified based on a

variety of pre-existing substantive legal relationship[s] between the person to be bound

and a party to the judgment," such as "preceding and succeeding owners of property,

bailee and bailor, and assignee and assignor."  "Third, we have confirmed that, in certain

limited circumstances, a nonparty may be bound by a judgment because she was

adequately represented by someone with the same interests who [wa]s a party to the

suit."  "Fourth, a nonparty is bound by a judgment if she assume[d] control over the

litigation in which that judgment was rendered.") (quotations omitted);[7] see also

Cuauhtli, 308 F. App'x at 773 (recognizing that Taylor "articulated six exceptions to the

identical party rule" and applying the categories to find privity between the current

plaintiff and his wife, who had been the only named plaintiff in the prior action).

        To summarize the foregoing principles:  the general rule is that a person cannot be bound by a judgment in litigation to which he was not a party.  However, there are six recognized exceptions to this rule.  These exceptions represent examples of relationships between a party and a nonparty that are sufficiently related to justify preclusion of the nonparty.  If any one of the exceptions applies to [defendants] in this case, due process is not offended, and the identity element necessary for preclusion is satisfied.

---

[7]The other three categories recognized by the Supreme Court are clearly inapplicable here.

U.S. ex rel. Kennard, 2009 WL 765002, at *8 (citing Taylor, 553 U.S. at 891-95; Hansberry v. Lee, 311 U.S. 32, 40 (1940); Cuauhtli, 2009 WL 188072, at *1; United States v. Bhatia, 545 F.3d 757, 759 (9th Cir. 2008); Pelt v. Utah, 539 F.3d 1271, 1281-82, 1284 (10th Cir. 2008); Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs., 533 F.3d 634, 640 (8th Cir. 2008); Meza, 908 F.2d at 1266) (footnote omitted).

Neither Sgt. Varnado, Mayor Goldsby nor the Amite City Council are successors in interest to the other Amite Defendants who were named defendants in Donley's prior lawsuit in this court, and there is no evidence that these entities controlled the prior litigation.  Thus, the court must determine "whether or not [Sgt. Varnado, Mayor Goldsby and the Amite City Council] were adequately represented by [the defendants] in the earlier suit.  In order to adequately have represented [Sgt. Varnado, Mayor Goldsby or the City Council, the previously named defendants] must have been 'so closely aligned to [their] interests as to be [their] virtual representative.'" Dilworth, 1996 WL 457425, at *1 (quoting Eubanks v. FDIC, 977 F.2d 166, 170 (5th Cir. 1992)).

Plaintiff's prior complaint in this court brought claims against Chief Trabona and Capt. Simmons for negligent hiring and training of their officers in relation to his arrest, failing to fire Sgt. Cuti and refusing to provide Donley with a copy of the internal

investigative report prepared by Sgt. Varnado.  Capt. Simmons and Chief Trabona were Sgt. Cuti's and Sgt. Varnado's superiors.

In the instant action, Donley alleges that Sgt. Varnado, Capt. Simmons and Chief Trabona failed adequately to investigate his complaint to the Amite Police Department about his arrest.   It is undisputed that Capt. Simmons directed Sgt. Varnado's investigation.  Plaintiff also asserts that Capt. Simmons and Chief Trabona knew that Officers Cuti, Phillips and Ordeneaux lied during his criminal trial, but that Capt. Simmons and Chief Trabona did nothing to stop the perjury and did not suspend the inferior officers.  Donley additionally claims that Capt. Simmons, Chief Trabona, Mayor Goldsby and the City Council failed to properly hire, train and/or supervise their police officer employees.  Thus, Capt. Simmons and Chief Trabona in the prior suit were so closely aligned with Sgt. Varnado's interests in defending plaintiff's similar claims in the instant case as to be Sgt. Varnado's virtual representative.

Moreover, to the extent that Donley alleges in the instant suit that the Amite City Council is responsible under Section 1983 for the policy decisions of Capt. Simmons and Chief Trabona regarding hiring, training and supervision of their officers, Capt. Simmons and Chief Trabona were so closely aligned to the City Council's interests in the prior suit as to be its virtual representatives.  Because Sgt. Varnado and the Amite City Council were in privity with the previously named defendants, Capt. Simmons and Chief

Trabona, claim preclusion bars Donley's claims against Sgt. Varnado and the City Council in the instant suit.

        b.     Under Louisiana law, Carter is "the same" party as the other Hudson's Defendants who were previously sued

Louisiana law does not use the term "privity" in relation to res judicata. For claim preclusion to apply, Louisiana law requires that the parties in the two lawsuits be "the same." La. Rev. Stat. § 13:4231. Nonetheless, Louisiana courts have interpreted this requirement in effectively the same fashion as the federal concept of privity.

"The requirement that the parties are the same in both suits does not mean that the parties must have the same physical identity, but that the parties must appear in the 'same quality or capacity.' . . . . Therefore, under La. Rev. Stat. § 13:4231, 'the parties are the same when they appear in the same capacities in both suits.'" Myers, 43 So. 3d at 211 (quoting Burguieres, 843 So. 2d at 1054; Berrigan v. Deutsch, Kerrigan & Stiles, LLP, 806 So. 2d 163, 167 (La. App. 4 Cir. 2002)). An "identity of parties" exists "whenever the same parties, their successors, or others appear so long as they share the same 'quality' as parties." Forum for Equality PAC v. McKeithen, 893 So. 2d 738, 745 (La. 2005) (quotation omitted).

Just as under federal common law, in Louisiana "the preclusive effect of an earlier judgment could bind a nonparty . . . whose interests were adequately represented by

parties to the prior litigation."  <u>Williams v. Orleans Levee Dist.</u>, 31 So. 3d 1048, 1049 (La. 2010) (citing <u>Forum for Equality PAC</u>, 893 So. 2d at 738); <u>accord</u> <u>Myers</u>, 43 So. 3d at 212.  When applying the res judicata statute, the Louisiana Supreme Court found it a "critical fact" "that the preclusive effect of the previous judgment is not being used <u>against</u> a nonparty to the litigation. The respondent is not being precluded from contesting a matter that he has not had full and fair opportunity to litigate.  To the contrary, the respondent was a party to the litigation" that spawned the prior judgment, which was being used preclusively against the respondent. <u>Williams</u>, 31 So. 3d at 1049; <u>accord</u> <u>Myers</u>, 43 So. 3d at 212.

In the instant case, Donley alleges that Carter, Peltier and Holifield were employees of Hudson's Salvage, LLC, the parent company of the Dirt Cheap Store, who participated in his unlawful detention and malicious prosecution.  In his previous state court action, plaintiff sued Hudson's Salvage, LLC, Peltier and Holifield "for personal injury, false arrest and imprisonment, defamation, malicious prosecution, and violation of his civil rights," arising out of his September 24, 2008 arrest and December 3, 2008 trial.  <u>Donley v. Hudson's Salvage LLC</u>, 2010 WL 5480438, at *1.  Those three named defendants in the prior action appeared in the "same quality or capacity" and adequately represented the interests of Carter in defending against plaintiff's claims in the instant suit.  Therefore, res judicata bars Donley's claims against Carter in the instant action.

      c.     Under Louisiana law, Mayor Goldsby and the City Council are "the same" parties as Reid, who was previously sued in state court

Plaintiff claims in the present suit that Mayor Goldsby illegally recommended and the City Council illegally appointed Reid as a magistrate because Reid was also the City Attorney.  In Donley's prior state court suit against Reid, he also claimed that Reid had no legal authority to act as magistrate or city attorney. <u>Donley v. Reid</u>, 2010 WL 5487149, at *1.  Reid had the same interest in defending his authority as an appointed magistrate in the prior action as Mayor Goldsby and the City Council would have in defending against plaintiff's allegations regarding Reid's lack of authority in the instant lawsuit.  Reid thus appeared in the "same quality or capacity" and adequately represented the interests of Mayor Goldsby and the City Council in the previous suit.  Therefore, res judicata bars Donley's claims against Mayor Goldsby and the City Council in the instant action.

### B.    <u>Plaintiff's Section 1983 Claims</u>

Alternatively, even if res judicata does not bar all of plaintiff's Section 1983 claims in the instant suit, defendants are entitled to summary judgment in their favor on Donley's Section 1983 claims, for the following reasons.

1.   There is no vicarious liability under Section 1983

It is well established that "Section 1983 offers no respondeat superior liability." Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002); accord Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).  Thus, Hudson's Salvage, LLC, the parent company of the Dirt Cheap Store, cannot be held liable under Section 1983 pursuant to a theory of respondeat superior, or vicarious, liability simply because the individual Hudson's Defendants were in its employ.  Id.; James v. Harris Cnty., 577 F.3d 612, 617 (5th Cir. 2009).

Donley alleges that defendants Peltier, Carter and Holifield work for Hudson's Salvage, LLC in Mississippi.  Plaintiff contends that these managers were on the telephone with Cox at the Dirt Cheap Store on September 24, 2008, directed the local employees' actions and later provided the police with video surveillance tapes from the store.  However, these supervisory employees cannot be held liable under Section 1983 for the actions of their subordinates on any theory of vicarious liability.  Ibarra v. Harris County, 243 F. App'x 830, 836 (5th Cir. 2007) (citing Alton v. Tex. A & M Univ., 168 F.3d 196, 200 (5th Cir. 1999)).

2.      The Hudson's Defendants are not state actors

Only state action in violation of an individual's constitutional rights may serve as the basis for a cognizable Section 1983 claim under federal law.  Therefore, Donley must show both a violation of a right secured by the Constitution or laws of the United States and that the deprivation was committed by a person acting under color of state law. James v. Tex. Collin County, 535 F.3d 365, 373 (5th Cir. 2008).  Donley argues that the Hudson's Defendants became state actors by calling the police, falsely accusing him of battery, testifying at his criminal trial and conspiring with the Amite Defendants to prosecute him maliciously.

Action taken under color of state law for purposes of Section 1983 requires a defendant's use of power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" and when the defendant is engaged in the "performance of official duties."  United States v. Causey, 185 F.3d 407, 414, 415 (5th Cir. 1999); accord Bryant v. Military Dep't, 597 F.3d 678, 687 (5th Cir. 2010), cert. denied, 131 S. Ct. 287 (2010); Townsend v. Moya, 291 F.3d 859, 861 (5th Cir. 2002).

When a plaintiff asserts a Section 1983 claim "against any private defendant, . . . the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law."  Morris v. Dillard Dep't

37

Stores, Inc., 277 F.3d 743, 747 (5th Cir. 2001) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982)).   Thus, Donley must show that the actions of the Hudson's Defendants are "fairly attributable to the state."   West v. Atkins, 487 U.S. 42, 49 (1988); accord Wong v. Stripling, 881 F.2d 200, 202 (5th Cir. 1989).

"While private action may give rise to state tort law claims, that action is an insufficient predicate on which to base constitutional claims under § 1983 . . . ." Maynard v. Price Realty Co., No. 3:03-CV-2030-R, 2003 WL 22976185, at *3 (N.D. Tex. Dec. 8, 2003), appeal dismissed, 102 F. App'x 854 (5th Cir. 2004) (citing Lewis v. Woods, 848 F.2d 649, 652 (5th Cir. 1988)).   "Put another way, acts of private parties . . . , 'even if wrongful, do not fall under the ambit of the' Constitution."   Bui Phu Xuan v. Fort Worth Star Telegram, 277 F. App'x 452, 454 (5th Cir. 2008) (quoting United States v. Sealed Juvenile 1, 255 F.3d 213, 216 (5th Cir. 2001)); see also Richard v. Hoechst Celanese Chem. Group, Inc., 355 F.3d 345, 352 (5th Cir. 2003) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)) ("'[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'").

> The Supreme Court has utilized a number of tests for deciding whether a private actor's conduct can be fairly attributable to the State.  See Richard, 355 F.3d at 352 (summarizing tests); Bass v. Parkwood, 180 F.3d 234, 241-43 (5th Cir. 1999) (same). The "public function test" examines whether the private entity performs a function which is "exclusively reserved to the

> State". <u>Flagg Brothers, Inc. v. Brooks</u>, 436 U.S. 149, 158 (1978). Under
> the "state compulsion test", a private actor's conduct is attributable to the
> State when it exerts coercive power over the private entity or provides
> significant encouragement. <u>See</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S.
> 144, 170-71 (1970). The "nexus" or "state action test" considers whether
> the State has inserted "itself into a position of interdependence with the
> [private actor, such] that it was a joint participant in the enterprise".
> <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345, 357-58 (1974); <u>see also</u> <u>Lugar</u>
> <u>v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982). And, under the "joint
> action test", private actors will be considered state actors where they are
> "willful participant[s] in joint action with the State or its agents". <u>Dennis</u>
> <u>v. Sparks</u>, 449 U.S. 24, 27 (1980). The Supreme Court has not resolved
> "[w]hether these different tests are actually different in operation or simply
> different ways of characterizing [this] necessarily fact-bound inquiry. . . ."
> <u>Lugar</u>, 457 U.S. at 939.

<u>Cornish v. Corr. Servs. Corp.</u>, 402 F.3d 545, 550 (5th Cir. 2005) (parallel citations
omitted).

   In the context of a merchant who requests police assistance when a suspected
crime has occurred on the merchant's premises, the Fifth Circuit has held that "a
merchant is <u>not</u> a state actor unless the conduct on the part of a guard or officer giving
rise to the claimed deprivation occurred based solely on designation of suspicion by the
merchant and was not accompanied by any independent investigation by the officer. . . .
[A]n officer's partial reliance on a report of suspicion made by a merchant employee will
<u>not create state action where the officer additionally performs an independent</u>
<u>investigation of the alleged crime</u>." <u>Morris</u>, 277 F.3d at 749 (emphasis added).
Therefore, the law in the Fifth Circuit "will not subject a merchant to § 1983 liability

39

unless an officer has failed to perform independent investigation, and that evidence of a proper investigation may include such indicators as an officer's interview of an employee, independent observation of a suspect, and the officer writing his own report." Id. at 750; accord Singleton v. St. Charles Parish Sheriff's Dep't, 306 F. App'x 195, 199 (5th Cir. 2009).

The Hudson's Defendants cannot be considered state actors under this test. Officers Ordeneaux, Phillips and Cuti responded to a call from the store that Donley was refusing to leave the store. Upon arrival, Ordeneaux was informed by Cox, Hingle and Spallinger that plaintiff had been photographing the store in violation of company policy, had refused to leave when asked, was verbally combative with the employees and had struck Hingle and Spallinger. Ordeneaux and Phillips investigated the complaint by interviewing these three employees; Donley, who was verbally combative and uncooperative with the officers when they asked for his driver's license; and a non-employee witness, John Ginn, Jr., who reported that he had seen Donley kneel down in a corner of the store and pretend to slip and fall. Ordeneaux saw no oil stain or other slippery items on that area of the floor while he was questioning plaintiff. The police officers arrested plaintiff based on their belief that he had committed simple battery on Hingle and Spallinger, both of whom asked to press charges. Officers Ordeneaux and Phillips wrote a police report that included their investigatory findings.

40

Furthermore, there is no evidence that the state, in the person of the Amite Defendants, exercised any coercive power or provided such significant encouragement, either overt or covert, that the Hudson's Defendants' actions must in law be deemed to be that of the state. "Plaintiff has failed to show that there was any state law in place that would compel the [Hudson's] defendants to act in the manner that they did. None of Plaintiff's [evidence] suggest[s] that these defendants took action due to the direction of the police officers. [Rather, the evidence shows] that these persons took action . . . using their own judgment of the propriety of their actions . . . ." Gallegos, 2008 WL 1794170, at *4 (citing Blum, 457 U.S. at 1004; Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 5-6 (1st Cir. 2005)). The United States "Supreme Court has held that a private party's invocation of state legal procedures does not constitute state action where the procedure is permissive and not mandatory." Morris, 277 F.3d at 751 (citing Lugar, 457 U.S. at 939 n.21; Flagg Bros., 436 U.S. at 164-65).

Neither the police officers nor the Hudson's Defendants did anything that would make the Hudson's Defendants state actors under the "nexus" or "joint action" tests. There is no evidence that the Hudson's Defendants communicated to Donley that they were acting under state authority by detaining him. To the contrary, they asked him to leave the store because he was violating company policy, and he refused, before they called the police. The Hudson's Defendants did not detain him. The only detention

41

occurred after the officers investigated and decided they had probable cause to arrest plaintiff. See Richard, 355 F.3d at 353 (citing Landry v. A-Able Bonding, Inc., 75 F.3d 200 (5th Cir. 1996) (defendant "had not acted under color of state law because he did not communicate that he was acting under state authority during the seizure" of plaintiff). "The fact that the defendants in this case invoked the assistance of the courts and police officers is not sufficient to show a nexus or joint effort between the defendants and the state." Bass, 180 F.3d at 243.

Even if Cox, Hingle and Spallinger provided a false report of battery to the police, that is insufficient to transform them into state actors.

> To maintain a claim that a private citizen is liable under § 1983 on the basis of joint action with state officials, [plaintiff] "must allege facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents." It is well settled that private parties do not become state actors merely by calling upon law enforcement for assistance. Likewise, private citizens who give information to law enforcement do not become state actors under Section 1983 when the information is used to effect an arrest, even if the citizen knew that the information was false.

Cook v. City of Shreveport, No. 10-0809, 2011 WL 3665000, at *4 (W.D. La. Aug. 19, 2011) (Hicks, J.) (quoting Polacek v. Kemper County, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010)) (citing Guillot v. Coastal Commerce Bank, No. 10-2092, 2010 WL 4812959, at *3 (E.D. La. Nov. 19, 2010) (Zainey, J.) (citing Daniel v. Ferguson, 839 F.2d

1124, 1130 (5th Cir. 1988))) (emphasis added); accord Polacek, 739 F. Supp. 2d at 952-54 (citing How v. City of Baxter Springs, 217 F. App'x 787, 793 (10th Cir. 2007); Lockhead v. Weinstein, 24 F. App'x 805, 806 (9th Cir. 2001); Hughes v. Meyer, 880 F.2d 967, 972 (7th Cir. 1989); Krisher v. Krisher, No. 3:09-CV-83-TS, 2009 WL 3568664, at *6 (N.D. Ind. Oct. 26, 2009); Givens v. Main St. Bank, No. 5:08CV25, 2009 WL 1120599, at *8 (N.D. W. Va. Apr. 24, 2009); Johns v. Home Depot U.S.A., Inc., 221 F.R.D. 400, 404 (S.D.N.Y. 2004); Kahermanes v. Marchese, 361 F. Supp. 168, 171 (E.D. Pa. 1973)); see also Spencer, 864 F.2d at 1381 ("[P]olice assistance in the lawful exercise of self-help does not create a conspiracy with the private person exercising that self-help.").

Donley has provided no evidence to support his subjective and conclusory allegation that the Amite police officers conspired with the Hudson's Defendants to have him arrested and tried.  Thus, there is no evidence of any joint action sufficient to convert the Hudson's Defendants into state actors.

Because the Hudson's Defendants are not state actors, plaintiff's Section 1983 claims against them have no basis in federal law.  The Hudson's Defendants are entitled to summary judgment in their favor as a matter of law on Donley's Section 1983 claims.

3.    Plaintiff has no malicious prosecution claim under Section 1983

Citing 42 U.S.C. § 1983, Donley claims that he was maliciously prosecuted by all defendants when he was unlawfully arrested without probable cause, charged with two counts of battery and convicted of one count, based on allegedly perjured testimony. However, in the Fifth Circuit, no cause of action exists for malicious prosecution under Section 1983.

> To the extent that [plaintiff] alleges that the [defendants] violated his constitutional rights by engaging in malicious prosecution, that argument is foreclosed by our decision in Castellano v. Fragozo, 352 F.3d 939, 958 (5th Cir. 2003) (en banc).  In Castellano, we noted that "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection–the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued."  Id. at 953.  However, we held that a freestanding 42 U.S.C. § 1983 claim based solely on malicious prosecution was not viable.  Id. at 942.  Rather, the claimant must allege "that officials violated specific constitutional rights in connection with a 'malicious prosecution.'"  Id. at 945.  Thus, [plaintiff's] attempt to assert a free-standing § 1983 malicious prosecution claim fails as a matter of law.

Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812-13 (5th Cir. 2010), cert. denied, 131 S. Ct. 2972 (2011).

This analysis applies to Donley's malicious prosecution claims arising out of all defendants' pretrial conduct.  He cannot maintain such claims under Section 1983 without specifically alleging a constitutional violation.

44

Donley has presented no competent summary judgment evidence that any defendant violated specific constitutional rights in connection with initiating a malicious prosecution. He alleges that he was unlawfully arrested without probable cause based on false allegations by Cox, Hingle and Spallinger. Even if accepted as true, these allegations of pretrial misconduct do not allege a violation of his due process rights.

> [The Supreme Court in] Albright rejected the contention that the initiation of criminal proceedings without probable cause is a violation of substantive due process, holding that the petitioner must look to the explicit text of the Fourth Amendment as a source of protection for the "particular sort of government behavior" at issue. To the point, causing charges to be filed without probable cause will not[,] without more[,] violate the Constitution. So defined, the assertion of malicious prosecution states no constitutional claim.

Castellano, 352 F.3d at 953 (citing Albright v. Oliver, 510 U.S. 266, 271, 273 (1994)) (emphasis added); accord Deville v. Marcantel, 567 F.3d 156, 169 (5th Cir. 2009).

Plaintiff may persist in a freestanding due process claim for "visible" constitutional right violations arising out of his trial. Castellano, 352 F.3d at 960. "While a malicious prosecution claim does not inevitably entail constitutional deprivation, the government's 'manufacturing of evidence and knowing use of that evidence along with perjured testimony to obtain a wrongful conviction deprives a defendant of his long recognized right to a fair trial secured by the Due Process Clause.'" Boyd v. Driver, 579 F.3d 513, 515 (5th Cir. 2009) (quoting Castellano, 352 F.3d at 942).

45

But, such allegations of misconduct at trial do <u>not</u> give rise to a claim of malicious prosecution in the Fifth Circuit.  <u>Id.</u>

Accordingly, plaintiff's claims against all defendants of malicious prosecution under Section 1983 must be dismissed.

4.  <u>Plaintiff has no conspiracy claim under Section 1983</u>

Donley alleges that all defendants conspired to have him arrested, charged and convicted.  Although "section 1983 plaintiffs may assert conspiracy claims, . . . [a] conspiracy by itself . . . is not actionable under section 1983."  <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1187 (5th Cir. 1990), <u>abrogated on other grounds by</u> <u>Martin v. Thomas</u>, 973 F.2d 449 (5th Cir. 1992)); <u>accord</u> <u>Hale v. Townley</u>, 45 F.3d 914, 920 (5th Cir. 1995).

To prevail on a Section 1983 conspiracy claim, plaintiff must establish "'the existence of (1) an agreement to do an illegal act and (2) an actual constitutional deprivation.'"  <u>Washington v. State of La.</u>, No. 04-2314, 2005 WL 711598, at *4 (E.D. La. Mar. 22, 2005) (Barbier, J.) (quoting <u>Whisenant v. City of Haltom City</u>, 106 F. App'x 915, 917 (5th Cir. 2004) (citing <u>Cinel v. Connick</u>, 15 F.3d 1338, 1343 (5th Cir. 1994))).

Mere allegations that a conspiracy existed are insufficient.  "A plaintiff must allege specific facts to show an agreement."  <u>Tebo v. Tebo</u>, 550 F.3d 492, 496 (5th Cir. 2008) (quotation omitted); <u>accord</u> <u>Anderson v. Law Firm of Shorty, Dooley & Hall</u>, 393

46

F. App'x 214, 217 (5th Cir. 2010) (citing <u>Lynch v. Cannatella</u>, 810 F.2d 1363, 1369-70

(5th Cir. 1987)); <u>Thompson v. Johnson</u>, 348 F. App'x 919, 922-23 (5th Cir. 2009) (citing

<u>Hale</u>, 45 F.3d at 920; <u>Arsenaux v. Roberts</u>, 726 F.2d 1022, 1024 (5th Cir. 1982)).

Donley has produced no <u>evidence</u> of any agreement between any defendants to do

any illegal act.  "[A]t the summary judgment stage, we require evidence–not absolute

proof, but not mere allegations either."  <u>Ontiveros v. City of Rosenberg</u>, 564 F.3d 379,

383 (5th Cir. 2009) (quotation omitted).  "All we have are [plaintiff's] unsubstantiated

assertions.  Needless to say, unsubstantiated assertions are not competent summary

judgment evidence." <u>Garcia v. LumaCorp, Inc.</u>, 429 F.3d 549, 555 (5th Cir. 2005) (citing

<u>Celotex</u>, 477 U.S. at 324) (quotation omitted).

Accordingly, all defendants are entitled to summary judgment in their favor on

plaintiff's conspiracy claim under Section 1983.

### 5.   <u>Magistrate Reid has judicial immunity</u>

Plaintiff's claims against defendant Reid in his capacity as a Magistrate of the

Amite City Court are barred by judicial immunity.  For more than one hundred years,

judges have been held immune from liability for judicial acts done within their

jurisdiction. <u>Stump v. Sparkman</u>, 435 U.S. 349, 356 (1978) (citing <u>Bradley v. Fisher</u>, 80

U.S. 335 (1871)); <u>Mays v. Sudderth</u>, 97 F.3d 107, 110 (5th Cir. 1996).  "A judge, of

whatever status in the judicial hierarchy, is immune from suit for damages resulting from

any acts performed in [his or her] judicial role."  Ammons v. Baldwin, 705 F.2d 1445, 1447 (5th Cir. 1983) (citations omitted); accord Mays, 97 F.3d at 110-11.  This judicial immunity applies even if a judge is accused of acting maliciously or corruptly.  Stump, 435 U.S. at 356-57; Pierson v. Ray, 386 U.S. 547, 554 (1967), overruled in part on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), as recognized by Hill v. Shelander, 992 F.2d 714, 716 (7th Cir. 1993); Mays, 97 F.3d at 110-11.  Judicial officers are absolutely immune from liability for damages unless they are without jurisdiction.  Id. at 111; Dayse v. Schuldt, 894 F.2d 170, 172 (5th Cir. 1990); Freeze v. Griffith, 849 F.2d 172, 175 (5th Cir. 1988).

In the past, however, judicial officers did not enjoy absolute immunity from suits seeking injunctive relief.  Relief of that nature was available under Section 1983 against state court judges acting in their judicial capacity.  Pulliam v. Allen, 466 U.S. 522, 541-42 (1984).  However, the Federal Courts Improvement Act of 1996 amended Section 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable."  42 U.S.C. § 1983.

The Federal Courts Improvement Act therefore statutorily overruled Pulliam's holding regarding the availability of injunctive relief against a state judge in his official

capacity.  Guerin v. Higgins, 8 F. App'x 31, 32 (2d Cir. 2001); Nolle v. Justices, 83 F.

Supp. 2d 204, 210 (D. Mass. 2000); see also Blin v. Story, 225 F.3d 1234, 1242 (11th

Cir. 2000) (1996 amendment to Section 1983 limits the relief available against a federal

judge to declaratory relief).  Thus, neither injunctive relief nor damages are available to

Donley in this Section 1983 action against Reid.  Tester v. Granola, 114 F. Supp. 2d 603,

618 (E.D. Mich. 2000); Nolle, 83 F. Supp. 2d at 210.

Plaintiff's claims against Magistrate Reid concern actions that are exclusively

within the scope of his role as a judicial officer and therefore within his jurisdiction.

Consequently, the doctrine of absolute judicial immunity bars Donley's suit against

Magistrate Reid.

### 6.    Witnesses are immune from civil suit for their testimony

To the extent plaintiff asserts Section 1983 claims against Ordeneaux, Phillips,

Cuti, Hingle and Spallinger based on their testimony against Donley at his criminal trial,

these defendants are also immune from suit.  "[W]itnesses are entitled to absolute

immunity against § 1983 suits based on their testimony in a criminal trial . . . ."

Mowbray v. Cameron County, 274 F.3d 269, 277 (5th Cir. 2001) (citing Briscoe v.

LaHue, 460 U.S. 325 (1983)).  Thus, "absolute witness immunity bars § 1983 suits for

conspiracy to commit perjury."  Id. at 277-78; accord Ibarra v. Harris County, 243 F.

App'x 830, 837-38 (5th Cir. 2007) (citing <u>Kinney v. Weaver</u>, 367 F.3d 337, 352 (5th Cir. 2004) (en banc)).

Furthermore,

[a]s a matter of logic, a person may not be prosecuted for conspiring to commit an act that he may perform with impunity. [Witnesses] cannot be liable under § 1983 for conspiracy to commit perjury where § 1983 grants them absolute immunity for that act.

      Moreover, allowing such conspiracy suits would permit most § 1983 perjury suits to be restyled as § 1983 claims for conspiracy to commit perjury, because a witness rarely prepares her testimony on her own.

<u>Mowbray</u>, 274 F.3d at 277 (quotation, citations and footnote omitted).

Accordingly, Ordeneaux, Phillips, Cuti, Hingle and Spallinger are entitled to summary judgment in their favor on plaintiff's Section 1983 claims based on their testimony at his criminal trial.

C.      <u>Plaintiff's State Law Claims</u>

For the foregoing reasons, I have granted summary judgment to all defendants on all of Donley's claims under federal law. "Ordinarily, the fact that all federal claims have been disposed of counsels in favor of the district court declining to retain jurisdiction over any pendent state law claims, but dismissal is not mandatory, and the district court has discretion to retain jurisdiction . . . ." <u>Morris</u>, 277 F.3d at 756 n.12 (citing <u>McClelland v. Gronwaldt</u>, 155 F.3d 507, 520-21 (5th Cir. 1998); <u>Branson v. Greyhound Lines, Inc.</u>, 126 F.3d 747, 758 n.9 (5th Cir. 1997)). However, when "the instant state

claims present no novel issues of state law and are easily dispatched, . . . the district court [does] not abuse its discretion in deciding the claims on the merits . . . ." Id. (citing Batiste v. Island Records, Inc., 179 F.3d 217, 227-28 (5th Cir. 1999)).

In the interest of judicial economy, I retain jurisdiction over plaintiff's state law claims in this matter, which present no novel or complicated issues. If res judicata does not bar all of Donley's claims under Louisiana law, defendants are nonetheless entitled to summary judgment on those claims, for the following reasons.

      1.    Except for malicious prosecution, plaintiff's state law claims have prescribed

All of plaintiff's tort claims under Louisiana law, except his malicious prosecution claim, have prescribed. The First Circuit Court of Appeal previously ruled that his malicious prosecution claim under state law was not prescribed because it did not accrue until December 3, 2008, the date of his criminal trial, and he filed his state court suit against the Hudson's Defendants less than one year later. The First Circuit remanded plaintiff's malicious prosecution claim to the state trial court. No party to the instant action has advised this court of the disposition of that claim. However, the Hudson's Defendants do not argue in this court that Donley's malicious prosecution claim has prescribed, presumably because prescription on that claim was interrupted when Donley

timely filed his state court.  <u>Johnson v. Lamartiniere</u>, 387 F. App'x 470, 472 (5th Cir. 2010) (citing La. Civ. Code arts. 3463, 3466).

Under Louisiana law,

[d]elictual actions are generally subject to a liberative prescription of one year, running from the day injury or damage is sustained.  A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is <u>constructive</u> knowledge of same.

<u>Donley v. Hudson's Salvage LLC</u>, 2010 WL 5480438, at *2 (citing La. Civ. Code art. 3492; <u>Campo v. Correa</u>, 828 So. 2d 502, 510. (La. 2002)).

The First Circuit Court of Appeal has already ruled that Donley's state law claims against Hudson's Salvage, Cox, Hingle, Spallinger, Peltier and Holifield "for personal injury, false arrest and imprisonment, . . . and violation of his civil rights" arising out of his September 24, 2008 arrest had prescribed before he filed his state court action against those defendants on December 1, 2009.  The First Circuit also held that Donley had failed to show that prescription had been suspended by the Louisiana  equitable tolling doctrine of <u>contra non valentem</u>.  <u>Id.</u> at *3-4.

For the same reasons cited by the First Circuit Court of Appeal, all of plaintiff's state law claims in the instant case, except his malicious prosecution claim, against all defendants prescribed before he filed this action on September 21, 2010, almost two years after the September 24, 2008 incident.  He has presented no evidence that <u>contra</u>

non valentem should apply.  All defendants are entitled to summary judgment in their favor on the basis of prescription as to plaintiff's state law claims, except malicious prosecution.

> 2.  Plaintiff cannot establish the essential elements of a malicious prosecution claim under state law

The Louisiana First Circuit Court of Appeal previously ruled that Donley's malicious prosecution claim under state law was not barred by prescription because it did not accrue until the date of that his criminal charges were dismissed, September 24, 2009 (which was the date of dismissal that Donley had alleged in that case), and he had filed his state court suit against some of the Hudson's Defendants less than one year later.  The Hudson's Defendants argue in the instant case that they are entitled to summary judgment on plaintiff's malicious prosecution claim because he cannot produce any evidence to satisfy one element of the six-part test for such a claim under Louisiana law.

> A successful claim for malicious prosecution requires proof of six elements:  1) the commencement or continuance of an original criminal or civil judicial proceeding; 2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; 3) its bona fide termination in favor of the present plaintiff; 4) the absence of probable cause for such proceeding; 5) the presence of malice therein; and 6) damages conforming to legal standards resulting to plaintiff.

LeBlanc v. Pynes, 69 So. 3d 1273, 1279  (La. App. 2d Cir. 2011), writ denied, 2011 WL 5084642 (La. Oct. 14, 2011) (citing Hibernia Nat'l Bank v. Bolleter, 390 So. 2d 842 (La.

1980); Robinson v. Goudchaux's, 307 So. 2d 287 (La. 1975); Arledge v. Sherrill, 738 So. 2d 1215, 1222 (La. App. 2d Cir. 1999)).  The Hudson's Defendants argue that Donley has no competent summary judgment evidence to establish the fourth factor of the malicious prosecution test, that there was the absence of probable cause to arrest and prosecute him.

The United States Fifth Circuit Court of Appeals affirmed the ruling in Donley's prior action in this court that the Amite police officers had probable cause to arrest Donley.  The Fifth Circuit stated that "[t]he record indicates that the officers responded to a call from the store complaining about Donley.  They interviewed witnesses on site who attested to Donley's allegedly [sic] battery.  This gave the officers knowledge sufficient to warrant a prudent man in believing that the person arrested had committed . . . an offense."  Donley, 419 F. App'x at 520.  The Hudson's Defendants rely on this finding and on the affidavits of Officers Ordeneaux and Phillips that the Amite Defendants filed in the instant case (which are identical to the ones they filed in Donley's prior case in this court) to show that Donley cannot establish an absence of probable cause for his arrest.

The Fifth Circuit's finding in the prior action and the officers' affidavits in the instant case establish that the officers had probable cause to arrest Donley.  Therefore,

the Amite Defendants are entitled to summary judgment in their favor on plaintiff's malicious prosecution claim.

However, plaintiff also contends that the <u>Hudson's Defendants</u> did not have probable cause to press charges against him because Cox, Hingle and Spallinger lied when they claimed that plaintiff had struck Hingle and Spallinger. For purposes of the fourth prong of the malicious prosecution test, the undisputed fact that the <u>officers</u> had probable cause does <u>not</u>, in and of itself, establish that the <u>Hudson's Defendants</u> had probable cause.

> The jurisprudence demonstrates that this element of probable cause focuses on the present defendant's mindset in instituting the original action against the plaintiff. "Probable cause focuses as much on the reasonable state of mind of [the defendant] in bringing the charge as the actual fact." Did the [Hudson's Defendants] have an honest and reasonable belief in the guilt of the accused when [they] pressed charges?

<u>LeBlanc</u>, 69 So. 3d at 1282 (quoting <u>Young Oil Co. of La. v. Durbin</u>, 412 So. 2d 620, 627 (La. App. 2d Cir. 1982) (citing <u>Robinson</u>, 307 So. 2d at 287; <u>Hibernia Nat'l Bank</u>, 390 So. 2d at 842; <u>Jones v. Soileau</u>, 448 So. 2d 1268 (La. 1984)). In the face of plaintiff's denial that he struck Hingle or Spallinger and the absence of any clear confirmation of such a strike on the surveillance videotape, it is not undisputed that Donley will be unable to establish that the <u>Hudson's Defendants</u> lacked probable cause to press charges.

Nonetheless, based on the competent summary judgment evidence, Donley cannot establish the second factor of the six-factor test for malicious prosecution. To fulfill the element of legal causation of malicious prosecution under Louisiana law, the Hudson's Defendants "must have caused the prosecution. An independent investigation by law enforcement of a complaint made by a citizen may break the chain of causation between the complaint and the ultimate commencement of a criminal proceeding." LeBlanc, 69 So. 3d at 1281 (citing Adams v. Harrah's Bossier City Inv. Co., 948 So. 2d 317, 320 (La. App. 2d Cir. 2007); Craig v. Carter, 718 So. 2d 1068, 1070 (La. App. 2d Cir. 1998)).

In the instant case, I have already "held in the context of the joint action test that the three officers . . . conducted an independent investigation. The officers spoke to [the Dirt Cheap] employees and gathered information. More importantly, they personally observed [and interviewed Donley]. The officers independently made their decision to . . . arrest [Donley]; thus, [the Hudson's Defendants were] not the legal cause of [Donley's] alleged injuries caused by . . . his arrest." Cook, 2011 WL 3665000, at *7 (citing Kennedy v. Sheriff of E. Baton Rouge, 935 So.2d 669, 690 (La. 2006); Adams, 948 So.2d at 318, 320). Based on their own independent investigation of the complaint of battery by Cox, Hingle and Spallinger, the Amite police officers believed the store employees and disbelieved plaintiff at the time of the arrest. This investigation and

determination broke the chain of causation between the citizens' complaint and the ultimate commencement of a criminal proceeding against Donley.

Because plaintiff has no evidence to establish legal causation, the Hudson's Defendants are entitled to summary judgment in their favor on his malicious prosecution claim.

<u>CONCLUSION</u>

For the foregoing reasons, **IT IS ORDERED** that plaintiff's motions for summary judgment, Record Doc. Nos. 89 and 118, are DENIED.  **IT IS FURTHER ORDERED** that defendants' motions for summary judgment, Record Doc. Nos. 62 and 69, are GRANTED, and that plaintiff's claims are DISMISSED WITH PREJUDICE, plaintiff to bear all costs of this proceeding.  Judgment will be entered accordingly.

Because there will be no further proceedings at this time in this court requiring an in-person appearance by plaintiff, IT IS FURTHER ORDERED that Plaintiff's Motion to Have Court Appoint a Hearing Impaired Interpreter, Record Doc. No. 93, is DISMISSED AS MOOT.

New Orleans, Louisiana, this ___29th___ day of November, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE